UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | ED CV14-01216 AB (JCx) | Date: | October 7, 2014 |
|---|---|---|---|

| Title: | St. Paul Fire and Marine Ins. Co., *et al.* v. Centex Homes, *et al.* |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR. |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**      [In Chambers] Order Granting Defendants' Motion to Dismiss (Dkt. No. 10)

Plaintiffs, general liability insurers, filed the operative complaint in this action asserting causes of action against their insureds for declaratory relief, breach of contract, and equitable reimbursement. (Dkt. No. 1.) Defendants move to dismiss the entire complaint. (Dkt. No. 10.) Because the first two causes of action were not ripe and were premature at the time they were filed, the Court lacks subject matter jurisdiction to adjudicate them and GRANTS the motion to dismiss them WITH LEAVE TO AMEND. And because Plaintiffs' duty to defend is ongoing in the underlying action against Defendants, the Court further GRANTS Defendants' motion to dismiss the third cause of action for equitable reimbursement WITH LEAVE TO AMEND. The entire complaint is DISMISSED WITHOUT PREJUDICE.

### I.   BACKGROUND

Plaintiffs in action are insurers St. Paul Fire and Marine Ins. Co. ("St. Paul Fire"), St. Paul Mercury Ins. Co. ("St. Paul Mercury"), and Traveler's Property Casualty Co. of America ("Travelers Property"). Plaintiffs refer to themselves collectively as "Travelers."

(Comp., p. 2.) As alleged in the Complaint, and taken as true for the purposes of a motion to dismiss (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)), Defendants Centex Homes and Centex Real Estate Corp. (collectively, "Centex") are Nevada corporations that developed the Trio Glen home development in Ontario, California. (Comp., ¶¶4-5, 17.)

One of Centex' sub-contractors for the Trio Glen development, Oak Leaf Landscape, Inc. obtained eight general liability insurance policies between 2003 and 2010 (collectively, the "Oak Leaf Policies"), all of which named Centex as an additional insured. (Comp., ¶¶9, 18, 19.) One of those policies was issued by St. Paul Fire for a policy period of July 1, 2003 through July 1, 2004. (Comp., ¶9.) The remaining seven Oak Leaf Policies were issued by St. Paul Mercury for policy periods from July 1, 2004 through August 20, 2010.[1] (Comp., ¶9.) Each of the Oak Leaf policies includes identical language covering property damage liability and creating a duty to defend. (Comp., ¶10.) The Oak Leaf Policies provide that any insured must "cooperate with and, when requested, assist [St. Paul Fire or St. Paul Mercury] in … taking other reasonable steps to help [them] investigate or settle, or defend a person or organization" protected in the policies. (Comp., ¶11.) The Oak Leaf Policies further prohibit an insured from "assum[ing] any financial obligation or pay[ing] out any money, other than for first aid given to others at the time of an accident without [St. Paul Fire's or St. Paul Mercury's] consent. (Comp., ¶12.) The Oak Leaf Policies also included a provision affording St. Paul Fire or St. Paul Mercury the express right to retain counsel of its own choosing in to defend the insured in the event of a covered claim. (Comp., ¶10.)

Another of Centex' sub-contractors for the Trio Glen development, Norcraft Holdings, L.P. and Norcraft Companies, Inc., took out general liability policies from Travelers Property covering the periods from December 31, 2002 through November 1, 2014 (the "Norcraft Policies"). (Comp., ¶13.) Like the Oak Leaf Policies, the Norcraft Policies included Centex as an additional insured and covered property damage losses and included a duty to defend. (Comp., ¶14, 18, 19.) Also like the Oak Glen Policies, the Norcraft Policies require any insured to cooperate with Travelers Property in the event of an occurrence, prohibit an insured from making non-emergency payments on a loss without Travelers Property's consent, and afford Travelers Property the express right to retain counsel of its own choosing in to defend the insured in the event of a covered claim. (Comp., ¶¶14-16.)

On February 13, 2014, various homeowners at the Trio Glen development brought a construction defect action in the California Superior Court against Centex in *Maggie, et al. v. Centex Homes, et al.* (San Bernardino Sup. Ct. Case No. CIVRS-1400849, the "*Maggie* Action"). (Comp., ¶17.) As an additional insured under the Oak Leaf and Norcraft Policies,

---

[1] The first six St. Paul Mercury Oak Leaf Policies were each annual policies beginning on July 1 and terminating on July 1 the following year. The seventh St. Paul Mercury had a shorter policy period, beginning July 1, 2010 and ending August 20, 2010. (Comp., ¶9.)

Centex tendered the *Maggie* Action to Travelers. (Comp., ¶18, 20.) Travelers agreed to defend Centex subject to a reservation of rights and defenses, and asserted its right to retain counsel. (Comp., ¶19, 21.) Travelers alleges that Centex "will refuse, has refused and is continuing to refuse to accept counsel appointed by TRAVELERS and is demanding independent counsel to defend it in the" *Maggie* Action. (Comp., ¶22.)

From those allegations, Travelers assert causes of action for:

- Declaratory Relief
- Breach of Contract
- Equitable Reimbursement

Centex now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Travelers opposes.

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(6) Motions

Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)") requires that a pleading present a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." That is, a pleading that does not satisfy Rule 8(a) is subject to dismissal under Rule 12(b)(6). Dismissal is proper under Rule 12(b)(6) where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 969, 699 (9th Cir. 1988). Under Rule 12(b)(2) "a court may dismiss a claim that is grouped together with other claims in a single cause of action, without dismissing the entire cause of action." *Perez v. Banana Republic, LLC*, 22 Wage & Hour Cas. 2d (BNA) 1700, 2014 WL 2918421 at *3 (E.D. Cal. June 26, 2014) (No. 14-cv-01132-JCS); *see also Hill v. Opus Corp.,* 841 F.Supp.2d 1070, 1082 (C.D. Cal. 2011).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted). Although this does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009). A sufficiently-pled claim must be "plausible on its face." *Id*. "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.   For purposes of a motion to dismiss,

allegations of fact are taken as true and are construed in the light most favorable to the nonmoving party. *See Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010).

The first step in determining whether a claim is sufficiently pled is to identify the elements of that claim. See *Iqbal*, 555 U.S. at 675. The court should then distinguish between the pleading's allegations of fact and its legal conclusions: a court "must take all of the factual allegations in the complaint as true," but should not give legal conclusions this assumption of veracity. *Id.* at 678. The court must then decide whether the pleading's factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." *Id.* at 679. The court may not consider material beyond the pleadings other than judicially noticeable documents, documents attached to the complaint or to which the complaint refers extensively, or documents that form the basis of the claims. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### B. Rule 12(b)(1)

As with Rule 12(b)(6), where a defendant brings facial attack on the subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), courts "assume [plaintiff's] [factual] allegations to be true and draw all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). But, again, courts do not accept the truthfulness on any legal conclusions contained in the complaint when assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

However, under Rule 12(b)(1), a party may also bring a factual attack on the district court's subject matter jurisdiction to hear a claim. Unlike a Rule 12(b)(6) motion or a facial Rule 12(b)(1) motion, a factual attack on subject matter jurisdiction under Rule 12(b)(1) affords the district court discretion to consider extrinsic evidence and, if disputed, weigh the evidence to determine whether the facts support subject matter jurisdiction, without converting the motion into a motion for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Nor does the Court presume the truthfulness of the plaintiff's allegations. *Id.* "The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).

///

///

///

### III. DISCUSSION

### A.  Ripeness

Centex first moves to dismiss Travelers' first and second causes of action (for declaratory relief and breach of contract, respectively), which allege that Centex failed to abide by the cooperation clauses in the Oak Leaf and Norcraft Policies, denied Travelers' right to appoint counsel, and erroneously asserted an right to have independent co-counsel. (Mtn., pp. 7-9; Reply, pp. 2-3; see also Comp., ¶¶32-40.) Centex argues that neither cause of action was ripe at the time it was filed.

Ripeness is a fundamental prerequisite for subject matter jurisdiction, and Centex' motion on this point is governed by Rule 12(b)(1). *See Nelson v. National Aeronautics and Space Admin.*, 530 F.3d 865, 873 (9th Cir.2008) ("To enforce Article III's limitation of federal jurisdiction to 'cases and controversies,' Plaintiffs must demonstrate both standing and ripeness."). Centex challenges the factual basis of Travelers' allegations that it failed to cooperate, refused to allow Travelers to appoint counsel, and demanded independent co-counsel at Travelers' expense with extrinsic evidence. The Court construes the motion on this point as a factual attack on the Court's subject matter jurisdiction.[2]

Centex notes that Travelers brought suit *before* it sent Centex the reservation of rights letters and *before* Centex had the chance to respond to Travelers' demands for cooperation and appointment of counsel. Travelers does not dispute this observation or Centex' evidence supporting it. Travelers sent its reservation of rights letter under the Oak Leaf Policies on June 13, 2014, *the same day* it filed this action. (Decl. of Protzman, Exh. A.) Travelers sent its reservation of rights letter under the Norcraft Policies on June 18, 2014, *five days after* it filed the operative complaint. (Decl. of Protzman, Exh. B.) Centex contends that it did, in fact, accept Travelers' demand for cooperation and accepted the counsel appointed by Travelers. (See Mtn., pp. 4-5; Decl. of Protzman, Exh. C, p. 28; Exh. D, p. 31.)

This precise question of ripeness has recently been addressed by a fellow district court with regard to virtually identical allegations by other Travelers affiliates against

---

[2] In opposition, Travelers argues that the motion fails to comply with Fed. R. Civ. Proc. 7(b)(1)(B) because it does not "state with particularity the grounds for seeking the order." (Opp., p. 4.) Travelers notes that Centex does not cite to Rule 12(b)(1) in the motion and concludes that the motion fails to the extent it attacks the Court's subject matter jurisdiction. (Opp., pp. 4-5.) However, the very case Travelers cites for this proposition, *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 983 (8th Cir. 2008), counsels the opposite result. The particularity requirement in Rule 7(b)(1) is designed to provide "the opposing party 'a meaningful opportunity to respond and the court with enough information to process the motion correctly.'" *Id.* (quoting *Andreas v. Volkswagen of America*, 336 F.3d 789, 793). But, as the *Hinz* court emphasized, "the particularity requirement 'should not be applied in an overly technical fashion when the purpose behind the rule is not jeopardized.'" *Hinz*, 538 F.3d at 983 (quoting *Andreas*, 336 F.3d at 793). Travelers does not argue, and the Court does not find, that the motion failed to provide Travelers with sufficient information to determine that Centex was challenging the Court's subject matter jurisdiction. Indeed, on another jurisdictional question (also falling under the ambit of Rule 12(b)(1)) discussed more fully below, Travelers offered substantial arguments in support of subject matter jurisdiction. (Opp., pp. 16-19.) The substance of the motion is clear that it attacks the first two causes of action for lack of subject matter jurisdiction as unripe, and the satisfies the written notice requirement set forth in Rule 7(b)(1)(B). (Mtn., pp. 7-9.)

Centex. There, the Court observed:

> Plaintiffs filed this suit on May 29, 2014, prior to Centex's receipt of Plaintiffs' reservation of rights letter on May 30, 2014. Therefore, Centex necessarily could not have refused Plaintiffs' appointment of counsel on or before May 29, 2014. Plaintiffs' claims were therefore unripe at the time they filed this suit to the extent they are premised on Centex's refusal of counsel in the [underlying suit against Centex].

*Fidelity and Guaranty Ins. Co. v. Centex Homes*, No. 1:14-CV-826-LJO-GSA, 2014 WL 4075999 at *4 (E.D. Cal. Aug. 15, 2014).

In opposition, Travelers does not address Centex' contention that the first and second causes of action are unripe. The Court, however, agrees with the reasoning in *Fidelity*, and holds that those claims were unripe at the time Travelers brought suit. Travelers did not send either letter before bringing suit and Centex could not have possibly refused to cooperate, refused Travelers' choice of counsel, or asserted a right to independent co-counsel when Travelers filed this action on June 13, 2014.[3]

Travelers' first and second causes of action were unripe at the time it brought suit, and the Court GRANTS the motion to dismiss those causes of action WITH LEAVE TO AMEND if and when those claims become ripe. Those claims are DISMISSED WITHOUT PREJUDICE.[4]

### B. Equitable Reimbursement

Travelers third cause of action seeks equitable reimbursement for expenses Travelers "has paid or will pay [for] certain defense fees and costs" to defend the *Maggie* Action which "are not potentially covered under the applicable insurance policies."

---

[3] At oral argument on this matter, Centex represented that it is currently bearing the cost of its independent co-counsel subject to a reservation of the right to *eventually* recover the costs of independent counsel after the *Maggie* action has concluded. The accuracy of that representation is not currently before the Court. But because the Court grants Travelers' leave to amend, it is worth observing that the p*ossibility of damages sometime in the future* if Centex eventually demands (and Travelers ultimately pays) the costs of independent counsel is not the same as *present contract damages* for which a claim for breach of contract will lie. Should Centex' representation at the hearing turn out to be true, the Court encourages Travelers to consider that fact in their decision to amend.

[4] It is worth noting that the Court does not go as far on this point as Centex urges. Centex contends that, because it subsequently accepted Travelers' choice of counsel to act as *co-counsel* in the *Maggie* Action (a fact extrinsic to the complaint), it cannot have breached the policy language and there is no actual dispute between Travelers and Centex about the cooperation clause for the purposes of declaratory judgment. (Mtn., pp. 8-9.) This argument is not an attack on the Court's subject matter jurisdiction, but a Rule-12(b)(6)-style attack on the sufficiency of Travelers' first and second causes of action. However, Centex supports this argument with extrinsic evidence of its own conduct, which the Court may not consider under Rule 12(b)(6). And in any event, those claims were not ripe at the time Travelers brought suit, and the Court lacks jurisdiction to determine whether Travelers has stated a claim. For this reason, the Court does not address the similar arguments Centex raises in the motion with respect to the second cause of action or breach of contract. (Mtn., pp. 9-17.)

(Comp., ¶42.) Travelers alleges the Oak Leaf and Norcraft Policies only obligate it to defend against potentially covered losses and seeks reimbursement "for the defense of claims not potentially covered under the insurance policies, plus interest." (Comp., ¶43.) Both parties agree that Travelers' claim for equitable reimbursement arises under California law. (Mtn., p. 17; Opp., p. 14.)

Under California law, an insurer's right of equitable reimbursement sounds in quasi-contract when the insurer's duty to defend attaches to a "mixed" claim – i.e., where the underlying suit involves both losses that are potentially covered and losses that have no potential for coverage. *Buss v. Superior Court*, 16 Cal.4th 35, 49, 939 P.2d 766, 775 (Cal. 1997). In such circumstances, California law imposes a temporary, "prophylactic" duty on the insurer to defend against the entire action, subject to later reimbursement for defense costs incurred in defense of the uncovered losses. *Id*. at 50-51. This equitable right to reimbursement is a right of restitution against the insured who is "unjustly enriched" by the insurer's defense of the uncovered loss. *Id*. at 51.

To state a claim for equitable reimbursement, under California law, Travelers must allege that:

> "(1) they agreed to immediately defend Defendant in the [*Maggie*] action in its entirety; [¶]
>
> (2) they paid money to defend claims against Defendant 'that are not even potentially covered' under the insurance policies; and [¶]
>
> (3) they reserved their right to seek reimbursement."

*Travelers Indem. Co. of Connecticut v. Centex Homes*, 1:14-CV-217-LJO-GSA, 2014 WL 3778269 (E.D. Cal. July 30, 2014) amended on reconsideration, 1:14-CV-217-LJO-GSA, 2014 WL 4081861 (E.D. Cal. Aug. 19, 2014) (citing *Buss v. Superior Court*, 16 Cal.4th at 47-50).

Travelers' complaint fails to plead either the first or the second element of equitable reimbursement. As both elements make clear, the right of equitable reimbursement operates retrospectively. The requirements that an insurer agree to defend the action "in its entirety" and that the insurer has "paid" (past tense) are "premised on a 'defend now seek reimbursement later' theory." *State v. Pac. Indem. Co.*, 63 Cal.App.4th 1535, 1549, 75 Cal.Rptr.2d 69, 78 (Cal. Ct. App. 1998). It is only *after* the insurer has defended the action in its entirety (or obtained a determination that it owes no duty to defend any portion of the underlying action), that equitable reimbursement allows the insurer to "obtain reimbursement of defense costs which, in *hindsight*, it never owed." *Scottsdale Ins. Co. v.*

*MV Transp.*, 36 Cal.4th 643, 657, 115 P.3d 460, 468 (Cal. 2005) (emphasis added). By its nature, that sort of "hindsight" is only available once the duty to defend terminates upon completion of the underlying action or a determination that the insurer owes no duty to defend at all.[5]

The reason California limits the cause of action for equitable reimbursement to *retrospective* claims for restitution is simple: until the underlying action is complete or the duty to defend is otherwise terminated, it is impossible to know the extent to which the insured has been unjustly enriched. So long as the duty to defend continues, the injury to the insurer is inherently incomplete, and the cause of action does not accrue. Were it otherwise, the insurer, the insured, and the courts would be forced to:

> "parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The plasticity of modern pleading allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa."

*Buss*, 16 Cal.4th at 49 (internal quotes and citation omitted).

The end result would be the sort of piecemeal litigation that the law abhors.[6] It would also force the insured to fight a prejudicial "two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers." *Montrose Chemical Corp. v. Superior Court (Canadian Universal Ins. Co.)*, 25 Cal.App.4th 902, 910, 31 Cal.Rptr.2d 38, 43 (Cal. Ct. App. 1994) (cited with approval on this point in *Scottsdale, Ins. Co.*, 36 Cal.4th at 662).

An insurer's right to equitable reimbursement under California law does not accrue until the insurer's duty to defend is discharged, either by completion of the underlying lawsuit or a determination that there is no potential for coverage on any claim asserted in the underlying action. Because Travelers has not alleged that its duty to defend the *Maggie* Action is discharged, it has failed to allege facts upon which a claim for equitable

---

[5] The duty to defend "[i]s discharged when the action is concluded" or if the insurer can show that there is no potential for coverage of any claim in the underlying action. *Buss*, 16 Cal.4th at 46. Until the duty is discharged "[t]he insurer must absorb all costs it expended on behalf of its insured while the duty to defend was in effect" (*Scottsdale Ins. Co.*, 36 Cal.4th at 657) subject to reimbursement under a reservation of rights.

[6] Suppose this action went to trial before the *Maggie* Action was completed. Assuming Travelers prevailed at trial on its claim for reimbursement, the *Maggie* Action would continue, and Travelers may yet be entitled to additional reimbursement. To obtain that additional reimbursement, Travelers would have to file a successive reimbursement action for the same underlying lawsuit. The only way to avoid such an absurd result would be the equally undesirable act of staying this entire action indefinitely until *Maggie* action is completed. California has elected to avoid both outcomes, providing that the insured may seek reimbursement for the entire amount spent defending uncovered losses in the underlying lawsuit.

reimbursement can be granted, and the Court GRANTS the motion to dismiss that cause of action WITH LEAVE TO AMEND (or to refile) if and when Travelers' duty to defend is discharged. Those claims are DISMISSED WITHOUT PREJUDICE.[7]

## IV.   CONCLUSION

In light of the foregoing, the court GRANTS the motion WITH LEAVE TO AMEND as to each of Plaintiffs' three causes of action. The complaint filed on June 13, 2014 (Dkt. No. 1), is DISMISSED WITHOUT PREJUDICE. Fed. R. Civ. Proc. 12(b)(1), (b)(6). Because the complaint is dismissed on the independent grounds discussed above, the Court does not reach the independent question of whether the action invokes the Court's subject matter jurisdiction in diversity.

However, in light of the Court's order granting leave to amend the second cause of action for breach of contract, the Court encourages Travelers to consider before amending that a breach of contract claim under California law requires allegations of damages. *Reichert v. General Ins. Co.* 68 Cal.2d 822, 830, 442 P.2d 377 (Cal. 1968). "[A] formulaic recitation" of the element of damages "will not do." *Bell Atlantic Corp. v. Twombly*, *supra*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient to allege the element of contract damages. *Ashcroft v. Iqbal*, *supra*, 555 U.S. at 678. Travelers must allege sufficient *facts* to "allow[] the court to draw the reasonable inference" that Travelers suffered contract damages (as opposed to mere prejudice). *Id*.

The Court additionally cautions Travelers that any amendment to the third cause of action must include an allegation (made in good faith) that the *Maggie* Action has either terminated, or that Travelers' duty to defend has otherwise discharged because no portion of the *Maggie* Action involves even the *potential* for a covered loss. If Travelers cannot so allege in good faith, their remedy under California law is to wait until their duty to defend is discharged and their cause of action has accrued, and to bring suit at that time.

Amended complaint shall be filed no later than October 28, 2014.

**IT IS SO ORDERED.**

---

[7] At oral argument on the motion, Travelers contended that the complaint still alleges a cognizable declaratory relief claim regarding their right to equitable reimbursement, even if the cause of action itself has not yet accrued. To begin with, Travelers does not allege a right to equitable reimbursement as one of the disputes in controversy in their cause of action for declaratory relief. (Comp., ¶¶ 23-32.) More importantly, "[d]eclaratory judgment actions are only justiciable if there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Seattle Audubon Society v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (emphasis added) (internal quotes omitted); *see also* 28 U.S.C. §2201. No cause of action for equitable reimbursement has yet accrued, nor is there a date certain upon which it will accrue in this case. The theoretical possibility that a cause of action for equitable reimbursement will eventually accrue at an unknowable future point is not sufficiently "immediate" or "real" to give rise to a claim for declaratory relief. So to the extent the Court can construe the complaint as alleging an actual controversy on the issue of equitable reimbursement with respect to the declaratory relief cause of action, those allegations are insufficient as a matter of law.